RON BENDER (SBN 143364); rb@lnbyb.com
MONICA Y. KIM (SBN 180139); myk@lnbyb.com
LEVENE, NEALE, BENDER, YOO & BRILL L.L.P.
10250 Constellation Blvd., Suite 1700
Los Angeles, California 90067
Telephone:  (310) 229-1234
Facsimile:  (310) 229-1244

Proposed Attorneys for David K. Gottlieb, Chapter 7 Trustee

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>DUANE DANIEL MARTIN AND TISHA MICHELLE MARTIN,<br><br>Debtors.<br>_____<br><br>DAVID K. GOTTLIEB, Chapter 7 Trustee,<br><br>        Plaintiff,<br><br>v.<br><br>DUANE DANIEL MARTIN, TISHA MICHELLE MARTIN, AND WON HUNDRED, INC.,<br><br>        Defendants.<br>_____ | Case No. 1:16-10045-VK<br><br>Chapter 7<br><br>Adv. No. 1:16-ap-01050-VK<br><br>**EMERGENCY MOTION OF CHAPTER 7 TRUSTEE FOR PRELIMINARY INJUNCTION**<br><br>Date:  [TO BE SET]<br>Time: [TO BE SET]<br>Ctrm:  301<br>        21041 Burbank Blvd.<br>        Woodland Hills, CA 91367 |

**TO THE HONORABLE VICTORIA S. KAUFMAN, UNITED STATES BANKRUPTCY JUDGE:**

Pursuant to Local Bankruptcy Rule 9075-1, David K. Gottlieb, Chapter 7 Trustee (the "Plaintiff" or "Trustee") for the bankruptcy estate of Duane Daniel Martin and Tisha Michelle Martin ("Debtors"), hereby files this emergency motion ("Motion") for issuance of a preliminary injunction: (A) enjoining the Defendant (the Debtors and Won Hundred, Inc. ("Won Hundred")) from spending, using, transferring, encumbering, or otherwise dissipating the Won Hundred Payment, XE Payments, and any other property or assets of XE (all as defined below) until the rights and claims of the parties as to these properties are determined by the Court pursuant to the complaint filed by the Trustee concurrently herewith ("Complaint"), and (B) ordering all of the Defendants to surrender and turnover to Plaintiff the Won Hundred Payment, XE Payments, and any other property or assets of XE until the rights and claims of the parties as to these properties are determined by the Court pursuant to the Complaint.

The Debtors filed a voluntary Chapter 7 case on January 7, 2016. At the time they filed bankruptcy, the Debtors held 100% of the interests in a business known as XE Visions, Inc. ("Business" or "XE"). On March 30, 2016, the Court authorized the Trustee to operate XE pursuant to Section 721 of the Bankruptcy Code. XE has significant cash in the possession of third parties which the Trustee is concerned could be dissipated absent the immediate entry of an order approving this Motion. The Trustee has filed the Complaint to determine legal rights as to certain of these payments. Until the Complaint is resolved, it is imperative to the operation of XE that XE's cash is not spent or otherwise dissipated by the Defendants. The full bases for the Motion are set forth more fully in the Memorandum of Points and Authorities annexed hereto.

Briefly, the Business is a production and loan-out company wholly owned by Debtors. As a production company, XE produces music, music videos, and "behind-the-scenes" videos based on performances by debtor, Tisha Michelle Martin ("Tisha"). As a loan-out company, XE contracts with studios regarding performances by Tisha, and receives payments in consideration for such performances. In addition to the intellectual property assets associated with the productions, XE's assets also include residuals and/or royalties from contracts assigned to it by loan out companies formerly operated by Debtors.

1

As of the Petition Date, the Trustee is informed that XE, which is incorporated in Louisiana, maintained one bank account, at Whitney Bank, which is headquartered in New Orleans, Louisiana.  According to the Debtors, as of the Petition Date, the balance in this account was $65,234.62, and, as of March 3, 2016, the balance was $111,572.88.  Debtor Duane Martin ("Duane") is the sole officer of XE.  Apparently, XE was a home business which the Debtors operated out of their residence although it was incorporated in Louisiana and its sole bank account is with a bank headquartered in Louisiana.

Pre-petition, a contract was entered into between XE and Woodridge Productions, Inc., an affiliate or division of Sony ("Woodbridge") which produced a television sitcom called "**The Dr. Ken Show**" ("Woodbridge Agreement").  Under the Woodbridge Agreement, XE agreed that Tisha would perform for The Dr. Ken Show, in consideration for payments to XE of approximately $45,000 per episode.

Despite the existence and current operation of XE as a production and loan-out company, the Debtors' ownership of XE, Duane's position as an officer of XE, and the Woodbridge Agreement signed by XE and Tisha, on January 11, 2016, *just 2 business days after the Debtors filed this case*, Tisha created a new loan-out company called Won Hundred as a vehicle for rendering her acting services.   There was never any written agreement between Woodbridge and Won Hundred for Tisha to perform on any program or show produced by Woodbridge including The Dr. Ken Show.  The sole purpose of the creation of Won Hundred appears to be to divert the post-petition payments due under the Woodbridge Agreement to Won Hundred from XE.

After the Debtors filed their bankruptcy case, and although there was no agreement between Woodbridge and Won Hundred, the Debtors requested that Woodbridge issue all post-petition payments earned for Tisha's performances on The Dr. Ken Show to Won Hundred.  For the post-petition period of January 15-19, 2016, Woodbridge paid Won Hundred $47,500 gross, and $39,500 net (net of commissions due to Tisha's talent agency, Kohner Agency), for post-petition services ("Won Hundred Payment"). Won Hundred, and Tisha who owns and controls Won Hundred, apparently negotiated this check prior to notifying the Trustee of this payment.

2

Subsequent to this Won Hundred Payment, Woodbridge issued 4 or 5 additional payments for Tisha's performance on The Dr. Ken Show, with the checks made payable to XE. These payments were all being held by Kohner Agency, Tisha's talent agency. These payments, net of commissions which may be due to Kohner Agency, total approximately $185,000 ("XE Payments").

The Debtors and the Trustee disagree as to who owns the Won Hundred Payment and the XE Payments. The Debtors take the position that Won Hundred owns all of these funds, despite there being no contract between Woodbridge (as producer of The Dr. Ken Show) and Won Hundred. The Trustee takes the position that XE owns all of these funds, and that the estate, as the sole owner of XE (and the operator of XE pursuant to Motion) owns these funds. The Trustee, as the operator of XE, has filed his Complaint to determine the legal rights as to these payments.

In order to protect the Won Hundred Payment and XE Payments, the Trustee demanded that such funds be turned over to the Trustee, to be held pending a resolution of rights and claims of the parties to such funds. The Debtors' bankruptcy counsel, Marc Lieberman, agreed; as a result, the Trustee had expected the XE Payments to be delivered promptly to the Trustee by Tisha's talent agency, Kohner Agency.

However, on March 15, 2016, the Trustee learned that Kohner Agency still had not delivered the XE Payments to the Trustee, and, to exacerbate matters, indicated that it would be sending the XE Payments totaling approximately $185,000 to John Smaha, who is non-bankruptcy counsel to Tisha, and counsel to Won Hundred. In other words, in direct contravention of the Debtors' prior agreement that the Trustee would be receiving the XE Payments and the Trustee's demands for the monies, the Trustee learned for the first time on March 15, 2016 that the Debtors were diverting the funds to another lawyer (John Smaha) who was not their bankruptcy lawyer (Marc Lieberman).

The Trustee is informed that Tisha's performance on The Dr. Ken Show has concluded, and it is not currently known whether the show will be renewed, and, even if renewed, whether Tisha will be asked to be included in additional shows. Therefore, the only current business of

3

XE is to continue to collect residuals or royalties on productions owned by XE, and maintain the assets and the Business, including the payment of any tax liabilities owed to state and federal taxing agencies.

The Trustee is very concerned that the Won Hundred Payment and the XE Payments which are in the possession of third parties will be dissipated, jeopardizing the value of XE which he is now operating unless the relief sought in this Motion is immediately granted.

The Trustee is informed that, in addition to cash, XE has valuable assets including intellectual property rights consisting of songs and videos created by Tisha, cash, and rights to residuals and royalties.  The Trustee will seek to liquidate and monetize the Business as part of his administration of this case.  Until the Trustee can liquidate and monetize the Business in a manner that is in the best interests of creditors, the Trustee must be able to obtain and protect all assets of XE.

**PLEASE TAKE FURTHER NOTICE** that, the Motion is based upon this Notice of Motion and Motion, the annexed Memorandum of Points and Authorities and the Declaration of Monica Y. Kim, all exhibits attached hereto, all of the files of this case, and the argument of counsel at the hearing on the Motion.

**WHEREFORE** the Trustee respectfully requests that the Court enter an order granting the relief sought in this Motion on an emergency basis.

DATED: April 1, 2016                    DAVID K. GOTTLIEB, CHAPTER 7 TRUSTEE

By:_____*/s/ Monica Y. Kim*_____
     Monica Y. Kim
     Levene, Neale, Bender, Yoo & Brill L.L.P.
     Proposed Counsel to Chapter 7 Trustee

4

1

2

### MEMORANDUM OF POINTS AND AUTHORITIES

3      David K. Gottlieb, the duly appointed Chapter 7 Trustee ("Trustee"), of the bankruptcy

4   estate of Duane Daniel Martin and Tisha Michelle Martin, the debtors herein ("Debtors"), hereby

5   files this emergency motion ("Motion") for issuance of a preliminary injunction: (A) enjoining

6   the Defendant (the Debtors and Won Hundred, Inc. ("Won Hundred")) from spending, using,

7   transferring, encumbering, or otherwise dissipating the Won Hundred Payment, XE Payments,

8   and any other property or assets of XE (all as defined below) until the rights and claims of the

9   parties as to these properties are determined by the Court pursuant to the complaint filed by the

10  Trustee concurrently herewith ("Complaint"), and (B) ordering all of the Defendants to surrender

11  and turnover to Plaintiff the Won Hundred Payment, XE Payments, and any other property or

12  assets of XE until the rights and claims of the parties as to these properties are determined by the

13  Court pursuant to the Complaint.  In support of the Motion, the Trustee respectfully represents as

14  follows:

15                                    I.

16                          ### STATEMENT OF FACTS

17      1.      The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy

18  Code on January 7, 2016 ("Petition Date").  The Trustee was duly appointed shortly thereafter to

19  serve as the Chapter 7 trustee for the Debtors' bankruptcy estate.

20      2.      Duane Martin ("Duane") is a television and movie actor.  Tisha Martin ("Tisha")

21  is a television actress and singer.

22      3.      The Debtors' schedules of assets and liabilities ("Schedules") filed under penalty

23  of perjury shows that they have, or previously had, interests in many businesses and business

24  ventures.  Among the Debtors' assets include their interests in XE Visions, Inc. ("Business" or

25  "XE").  Briefly, the Business is a production and loan-out company wholly owned by Debtors.

26  As a production company, XE produces music, music videos, and "behind-the-scenes" videos

27  based on performances by debtor, Tisha.  As a loan-out company, XE contracts with studios

28  regarding performances by Tisha, and receives payments in consideration for such performances.

5

In addition to the intellectual property assets associated with the productions, XE's assets also include residuals and/or royalties from contracts assigned to it by loan out companies formerly operated by Debtors.

4.      As of the Petition Date, the Trustee is informed that XE, which is incorporated in Louisiana, maintained one bank account, at Whitney Bank, which is headquartered in New Orleans, Louisiana.  According to the Debtors, as of the Petition Date, the balance in this account was $65,234.62, and, as of March 3, 2016, the balance was $111,572.88.  The Debtor, Duane, is the sole officer of XE.  Apparently, XE was a home business which the Debtors operated out of their residence although it was incorporated in Louisiana and its sole bank account is with a bank headquartered in Louisiana.

5.      Pre-petition, a contract was entered into between XE and Woodridge Productions, Inc., an affiliate or division of Sony ("Woodbridge") which produced a television sitcom called "**The Dr. Ken Show**" ("Woodbridge Agreement").  Under the Woodbridge Agreement, XE agreed that Tisha would perform for The Dr. Ken Show, in consideration for payments to XE of approximately $45,000 per episode.

6.      Despite the existence and current operation of XE as a production and loan-out company, the Debtors' ownership of XE, Duane's position as an officer of XE, and the Woodbridge Agreement signed by XE and Tisha, on January 11, 2016, _**just 2 business days after the Debtors filed this case**_, Tisha created a new loan-out company called Won Hundred, Inc. ("Won Hundred") as a vehicle for rendering her acting services.   There was never any written agreement between Woodbridge and Won Hundred for Tisha to perform on any program or show produced by Woodbridge including The Dr. Ken Show.  The sole purpose of the creation of Won Hundred appears to be to divert the post-petition payments due under the Woodbridge Agreement to Won Hundred from XE.

7.      After the Debtors filed their bankruptcy case, and although there was no agreement between Woodbridge and Won Hundred, the Debtors requested that Woodbridge issue all post-petition payments earned for Tisha's performances on The Dr. Ken Show to Won Hundred.  For the post-petition period of January 15-19, 2016, Woodbridge paid Won Hundred

6

$47,500 gross, and $39,500 net (net of commissions due to Tisha's talent agency, Kohner Agency), for post-petition services ("Won Hundred Payment"). Won Hundred, and Tisha who owns and controls Won Hundred, apparently negotiated this check prior to notifying the Trustee of this payment.

8.      Subsequent to this Won Hundred Payment, Woodbridge issued 4 or 5 additional payments for Tisha's performance on The Dr. Ken Show, with the checks made payable to XE. These payments were all being held by Kohner Agency, Tisha's talent agency.  These payments, net of commissions which may be due to Kohner Agency, total approximately $185,000 ("XE Payments").

9.      The Debtors and the Trustee disagree as to who owns the Won Hundred Payment and the XE Payments.  The Debtors take the position that Won Hundred owns all of these funds, despite there being no contract between Woodbridge (as producer of The Dr. Ken Show) and Won Hundred.  The Trustee takes the position that XE owns all of these funds, and that the estate, as the sole owner of XE (and the operator of XE pursuant to Motion) owns these funds.

10.     In order to protect the Won Hundred Payment and XE Payments, the Trustee demanded that such funds be turned over to the Trustee, to be held pending a resolution of rights and claims of the parties to such funds.  The Debtors' bankruptcy counsel, Marc Lieberman, agreed; as a result, the Trustee had expected the XE Payments to be delivered promptly to the Trustee by Tisha's talent agency, Kohner Agency.

11.     However, on March 15, 2016, the Trustee learned that Kohner Agency still had not delivered the XE Payments to the Trustee, and, to exacerbate matters, indicated that it would be sending the XE Payments totaling approximately $185,000 to John Smaha, who is non-bankruptcy counsel to Tisha, and counsel to Won Hundred.   In other words, in direct contravention of the Debtors' prior agreement that the Trustee would be receiving the XE Payments and the Trustee's demands for the monies, the Trustee learned for the first time on March 15, 2016 that the Debtors were diverting the funds to another lawyer (John Smaha) who was not their bankruptcy lawyer (Marc Lieberman).

12.    The Trustee is informed that Tisha's performance on The Dr. Ken Show has concluded, and it is not currently known whether the show will be renewed, and, even if renewed, whether Tisha will be asked to be included in additional shows.  Therefore, the only current business of XE is to continue to collect residuals or royalties on productions owned by XE, and maintain the assets and the Business, including the payment of any tax liabilities owed to state and federal taxing agencies.

13.    The Trustee is informed that XE has valuable assets including intellectual property rights consisting of songs and videos created by Tisha, cash, and rights to residuals and royalties.  The Trustee will seek to liquidate and monetize the Business as part of his administration of this case.

14.    On March 30, 2016, the Court authorized the Trustee to operate the Business pursuant to Section 721 of the Bankruptcy Code.

15.    Concurrently herewith, the Trustee has filed his complaint ("Complaint") against the Debtors and Won Hundred seeking as judicial determination as to the ownership of the Won Hundred Payment and the XE Payments, permanent injunction and for damages.

16.    Until the Trustee can liquidate and monetize the Business in a manner that is in the best interests of creditors, the Trustee must be able to control the assets of the Business through, among other things, the immediate turnover of all such assets including XE's cash in its bank account, and XE Payments, and avoid the dissipation of these funds.  However, the Trustee is very concerned that parties, such as Kohner Agency and John Smaha, are seeking to control the assets of XE, in direct contradiction to agreements and representations of the Debtors' bankruptcy counsel and that such assets will be dissipated unless the relief sought in this Motion is granted.

17.    Given that one or more of the Debtors are directing the actions and positions of these lawyers and the talent agency which appear to be inconsistent, the Trustee is not comfortable, and, in fact, very worried, that the assets, cash and business of XE will be impaired or dissipated unless he obtains control over such assets and cash immediately.

18.    All of XE's assets are necessary to the Trustee to operate the Business, and for a possible sale of the Business.  Given the Debtors' conduct thus far in the case, the Trustee is highly concerned that the assets of XE, including its cash, could be improperly diverted, or dissipate to the severe detriment of creditors.  Therefore, the relief sought in this Motion is imperative and urgent.

## II.

## DISCUSSION

## THE TRUSTEE IS ENTITLED TO A PRELIMINARY INJUNCTION AS REQUESTED HEREIN

### A.    THE APPLICABLE STANDARD

Rule 65 of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Rule 7065 of the Federal Rules of Bankruptcy Procedure, provides the procedural framework for issuance of injunctions and restraining orders.  While the substantive test for issuance of an injunction has evolved over time, the touchstones for injunctive relief have remained immutable:  irreparable injury and the inadequacy of legal remedies.  *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1981).

Over the years, various circuits have differed over whether parties seeking injunctive relief are required to demonstrate "some", "probable" or other degree of success on the merits and irreparable harm. In *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), the Supreme Court resolved this issue by articulating a definitive standard:

> A plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Id*. at 20. *Winter* did not expressly address whether "sliding scale tests," in which the particular presence of one factor could, in combination with other factors, make up for the lesser presence

of another factor, remain viable.  *See, e.g. Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.2d 810, 813 (9th Cir. 2003) (stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits).  The Ninth Circuit, however, recently addressed the issue and held "that the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable after the Supreme Court's decision in *Winter*." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134 (9th Cir. 2011).   Suggesting that the likelihood of success on the merits could be outweighed by other considerations, the Ninth Circuit stated the following alternative:

> That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest.

*Id*. at 1135.   *See also, Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Limited*, 598 F.3d 30, 34 (2nd Cir. 2010) ("The 'serious questions' standard permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction.").

Although the moving party has the burden of persuasion when seeking a preliminary injunction, because the purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, as well as the haste that is often necessary in obtaining such relief, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).   Indeed, the Ninth Circuit has held that in light of the urgency of obtaining a preliminary injunction, the trial court may even give some weight to otherwise inadmissible evidence when to do so serves the purpose of preventing irreparable harm before trial.  *Flynt Distributing Company, Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

For the reasons explained below, the Trustee respectfully submits that **all** of the factors to be considered by the Court in determining whether to issue a preliminary injunction, whether under the traditional test or the "sliding scale" test, weigh solidly in favor of issuance of a preliminary injunction in this case.

### B.    <u>LIKELIHOOD OF SUCCESS ON THE MERITS</u>

To establish a ***likelihood of success*** on the merits, the moving party must show a "fair chance" of success on its claims. *In re Focus Media Inc., 387 F.3d 1077, 1086 (9th Cir.2004)*, *cert. den.*, *Rubin v. Pringle*, 544 U.S. 923, 125 S.Ct. 1674, 161 L.Ed.2d 482 (2204), *quoting* the Ninth Circuit's *en banc* decision in *Republic of the Philippines v. Marcos,* 862 F.2d 1355, 1362 (9th Cir. 1988); *Crum v. Blixeth (In re Big Springs Realty LLC),* 426 B.R. 860, 865 (Bkrtcy. D.Mont. 2010).

The Complaint in this adversary proceeding alleges numerous claims for relief, including request for judicial determination in favor of the Trustee that XE is the rightful owner as to the Won Hundred Payment and the XE Payments and for damages, and the Trustee believes he can likely succeed on all of them.

Admittedly, there was no contract between Woodbridge and Won Hundred for Won Hundred to provide services.   Rather, it was XE which had contractual privity with Woodbridge, and Woodbridge rendered payments (Won Hundred Payment and the XE Payments) pursuant to this contract.  Tisha attempted to divert these payments by attempting to breach her and XE's obligations under the Woodbridge Agreement, and establishing Won Hundred to intercept these payments.  Even if the funds at issue are determined by the Court to constitute property of Won Hundred, XE would in that event have a significant breach of contract and damages claim against Tisha and Won Hundred for their actions in diverting the funds from XE.  Therefore, in either case, XE should be determined to be entitled to the funds.

For all of the foregoing reasons, the Trustee respectfully submits that there is a strong likelihood that he will prevail on the merits of its claims in this litigation.

11

### C.    IRREPARABLE INJURY

Irreparable injury to the estate is likely if Defendants are not immediately enjoined as requested herein.  The Won Hundred Payment and the XE Payments are significant amounts of money to XE, which will be critical to the Trustee's ability to operate XE and ultimately to liquidate the estate's interest in XE.  Unless enjoined and ordered to turn over the funds, XE (and this estate) could forever lose these funds if they are spent or otherwise dissipated by the Defendants, and jeopardize recovery to creditors.  The Defendants have already moved the funds, initially from their talent agency to the purported counsel to Won Hundred.  There is nothing to prevent the Defendants from spending all of the funds, which would be highly prejudicial to XE.  The injury would be irreparable.

### D.    BALANCE OF HARDSHIPS

The balance of hardships overwhelmingly favors granting the Trustee's requested relief. The funds are property of XE, and the Trustee is now operating the business of XE in an effort to preserve the value of the business for the benefit of creditors.  The preservation of these funds is critical to the creditors of this estate being repaid.

Defendants, on the other hand, will not suffer any hardships if it is enjoined from receiving any of the funds which may be determined by the Court through the Complaint that the funds never belonged to them in the first place.  The right to spend the funds does not belong to the Defendants if the funds were illegally taken.  There is no "irreparable harm" suffered when they may be determined to have acted improperly in taking the funds.

### E.    ADVANCEMENT OF THE PUBLIC INTEREST.

Here, there is a generalized public interest in favor of promoting compliance by debtors of bankruptcy laws and procedures.  This interest would be hindered if the proceeds from the XE, which is needed by the Trustee to preserve the value of the estate, are placed out of the reach of creditors.  There is also a public interest in maintaining the integrity of the bankruptcy system.  *In re Arana*, 456 B.R. 161, 171 (Bankr. E.D.N.Y. 2011).  This interest would be severely undermined if the Trustee, who has been authorized to operate the Debtors' business,

1    is prevented from preserving and maintaining the assets of that business, and the Defendants are

2    allowed to reap the benefits of property that does not belong to them, to the dire detriment of the

3    Debtor's creditors.

4                                              **III.**

5                                    **<u>CONCLUSION</u>**

6            Based on the foregoing, the Trustee respectfully requests that the Motion be granted in all

7    respects, and for such other and further relief as the Court deems just and proper under the

8    circumstances.

9    DATED: April 1, 2016                    DAVID K. GOTTLIEB, CHAPTER 7 TRUSTEE

10                                           By:_____*/s/ Monica Y. Kim*_____
                                                  Monica Y. Kim
11                                                Levene, Neale, Bender, Yoo & Brill L.L.P.
                                                  Proposed Counsel to Chapter 7 Trustee
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                              13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## DECLARATION OF MONICA Y. KIM

I, Monica Y. Kim, hereby declare and state as follows:

1.    I have personal knowledge of the facts set forth herein, and, if called as a witness, could and would testify competently with respect thereto.

2.    I am a partner of Levene, Neale, Bender, Yoo & Brill L.L.P., proposed bankruptcy counsel to David K. Gottlieb, the duly appointed chapter 7 trustee ("Trustee") for the bankruptcy estate of Duane Daniel Martin and Tisha Michelle Martin, the debtors ("Debtors").  I am licensed to practice law in the State of California and before this Court.

2.    The Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on January 7, 2016 ("Petition Date").  The Trustee was duly appointed shortly thereafter to serve as the Chapter 7 trustee for the Debtors' bankruptcy estate.

3.    Duane Martin ("Duane") is a television and movie actor.  Tisha Martin ("Tisha") is a television actress and singer.

4.    The Debtors' schedules of assets and liabilities ("Schedules") filed under penalty of perjury shows that they have, or previously had, interests in many businesses and business ventures.  Among the Debtors' assets include their interests in XE Visions, Inc. ("Business" or "XE").  Briefly, the Business is a production and loan-out company wholly owned by Debtors. As a production company, XE produces music, music videos, and "behind-the-scenes" videos based on performances by debtor, Tisha.  As a loan-out company, XE contracts with studios regarding performances by Tisha, and receives payments in consideration for such performances. In addition to the intellectual property assets associated with the productions, XE's assets also include residuals and/or royalties from contracts assigned to it by loan out companies formerly operated by Debtors.

5.    As of the Petition Date, the Trustee is informed that XE, which is incorporated in Louisiana, maintained one bank account, at Whitney Bank, which is headquartered in New Orleans, Louisiana.  According to the Debtors, as of the Petition Date, the balance in this account

was $65,234.62, and, as of March 3, 2016, the balance was $111,572.88. The Debtor, Duane, is the sole officer of XE. Apparently, XE was a home business which the Debtors operated out of their residence although it was incorporated in Louisiana and its sole bank account is with a bank headquartered in Louisiana.

6. Pre-petition, a contract was entered into between XE and Woodridge Productions, Inc., an affiliate or division of Sony ("Woodbridge") which produced a television sitcom called "**The Dr. Ken Show**" ("Woodbridge Agreement"). Under the Woodbridge Agreement, XE agreed that Tisha would perform for The Dr. Ken Show, in consideration for payments to XE of approximately $45,000 per episode.

7. Despite the existence and current operation of XE as a production and loan-out company, the Debtors' ownership of XE, Duane's position as an officer of XE, and the Woodbridge Agreement signed by XE and Tisha, on January 11, 2016, ___just 2 business days after the Debtors filed this case___, Tisha created a new loan-out company called Won Hundred, Inc. ("Won Hundred") as a vehicle for rendering her acting services. There was never any written agreement between Woodbridge and Won Hundred for Tisha to perform on any program or show produced by Woodbridge including The Dr. Ken Show. The sole purpose of the creation of Won Hundred appears to be to divert the post-petition payments due under the Woodbridge Agreement to Won Hundred from XE.

8. After the Debtors filed their bankruptcy case, and although there was no agreement between Woodbridge and Won Hundred, the Debtors requested that Woodbridge issue all post-petition payments earned for Tisha's performances on The Dr. Ken Show to Won Hundred. For the post-petition period of January 15-19, 2016, Woodbridge paid Won Hundred $47,500 gross, and $39,500 net (net of commissions due to Tisha's talent agency, Kohner Agency), for post-petition services ("Won Hundred Payment"). Won Hundred, and Tisha who owns and controls Won Hundred, apparently negotiated this check prior to notifying the Trustee of this payment.

9. Subsequent to this Won Hundred Payment, Woodbridge issued 4 or 5 additional payments for Tisha's performance on The Dr. Ken Show, with the checks made payable to XE. These payments were all being held by Kohner Agency, Tisha's talent agency. These payments,

net of commissions which may be due to Kohner Agency, total approximately $185,000 ("XE Payments").

10. The Debtors and the Trustee disagree as to who owns the Won Hundred Payment and the XE Payments.  The Debtors take the position that Won Hundred owns all of these funds, despite there being no contract between Woodbridge (as producer of The Dr. Ken Show) and Won Hundred.  The Trustee takes the position that XE owns all of these funds, and that the estate, as the sole owner of XE (and the operator of XE pursuant to Motion) owns these funds.

11. In order to protect the Won Hundred Payment and XE Payments, the Trustee demanded that such funds be turned over to the Trustee, to be held pending a resolution of rights and claims of the parties to such funds.  The Debtors' bankruptcy counsel, Marc Lieberman, agreed; as a result, the Trustee had expected the XE Payments to be delivered promptly to the Trustee by Tisha's talent agency, Kohner Agency.

12. However, on March 15, 2016, the Trustee learned that Kohner Agency still had not delivered the XE Payments to the Trustee, and, to exacerbate matters, indicated that it would be sending the XE Payments totaling approximately $185,000 to John Smaha, who is non-bankruptcy counsel to Tisha, and counsel to Won Hundred.  In other words, in direct contravention of the Debtors' prior agreement that the Trustee would be receiving the XE Payments and the Trustee's demands for the monies, the Trustee learned for the first time on March 15, 2016 that the Debtors were diverting the funds to another lawyer (John Smaha) who was not their bankruptcy lawyer (Marc Lieberman).

13. The Trustee is informed that Tisha's performance on The Dr. Ken Show has concluded, and it is not currently known whether the show will be renewed, and, even if renewed, whether Tisha will be asked to be included in additional shows.  Therefore, the only current business of XE is to continue to collect residuals or royalties on productions owned by XE, and maintain the assets and the Business, including the payment of any tax liabilities owed to state and federal taxing agencies.

14. The Trustee is informed that XE has valuable assets including intellectual property rights consisting of songs and videos created by Tisha, cash, and rights to residuals and royalties.

The Trustee will seek to liquidate and monetize the Business as part of his administration of this case.

15. On March 30, 2016, the Court authorized the Trustee to operate the Business pursuant to Section 721 of the Bankruptcy Code.

16. Concurrently herewith, the Trustee has filed his complaint ("Complaint") against the Debtors and Won Hundred seeking as judicial determination as to the ownership of the Won Hundred Payment and the XE Payments, permanent injunction and for damages.

17. Until the Trustee can liquidate and monetize the Business in a manner that is in the best interests of creditors, the Trustee must be able to control the assets of the Business through, among other things, the immediate turnover of all such assets including XE's cash in its bank account, and XE Payments, and avoid the dissipation of these funds.  However, the Trustee is very concerned that parties, such as Kohner Agency and John Smaha, are seeking to control the assets of XE, in direct contradiction to agreements and representations of the Debtors' bankruptcy counsel and that such assets will be dissipated unless the relief sought in this Motion is granted.

18. Given that one or more of the Debtors are directing the actions and positions of these lawyers and the talent agency which appear to be inconsistent, the Trustee is not comfortable, and, in fact, very worried, that the assets, cash and business of XE will be impaired or dissipated unless he obtains control over such assets and cash immediately.

19. All of XE's assets are necessary to the Trustee to operate the Business, and for a possible sale of the Business.  Given the Debtors' conduct thus far in the case, the Trustee is highly concerned that the assets of XE, including its cash, could be improperly diverted, or dissipate to the severe detriment of creditors.  Therefore, the relief sought in this Motion is imperative and urgent.

1       I declare under penalty of perjury under the laws of the United States of America that the

2  foregoing is true and correct.

3       Executed this 1ST day of April, 2016, at Los Angeles, California.

4

5                  */s/ Monica Y. Kim*
                     Monica Y. Kim

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

10250 Constellation Blvd., Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify* **EMERGENCY MOTION OF CHAPTER 7 TRUSTEE FOR PRELIMINARY INJUNCTION** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 1, 2016, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On April 1, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on April 1, 2016, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Attorney Service
The Honorable Victoria Kaufman
U.S. Bankruptcy Court
21041 Burbank Blvd., #312
Woodland Hills, CA 91367

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 1, 2016 | Jason Klassi | /s/ Jason Klassi |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

19

**1:16-ap-01050-VK Notice will be electronically mailed to:**

Monica Y Kim on behalf of Plaintiff David K Gottlieb, Chapter 7 Trustee
myk@lnbrb.com, myk@ecf.inforuptcy.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov